24379

The STATE, Respondent v. Randy McKNIGHT, Appellant.
(467 S.E. (2d) 919)

Supreme Court

*Chief Attorney Daniel T. Stacey* and *Assistant Appellate Defender Tara Dawn Shurling*, both of the *South Carolina Office of Appellate Defense*, Columbia, *for Appellant.*

*Attorney General T. Travis Medlock, Chief Deputy Attorney General Donald J. Zelenka, Senior Assistant Attorney General Harold M. Coombs, Jr., Staff Attorney G. Thomas Chase*, Columbia; and *Solicitor Dudley Saleeby, Jr.*, Florence, *for Respondent.*

Heard Oct. 5, 1995.

Decided Mar. 4, 1996.

BURNETT, Justice:

Appellant was tried in November, 1992, for murder, armed robbery, and conspiracy. The jury was unable to reach a verdict and a mistrial was declared. In March, 1993, Appellant was retried for the same offenses and was convicted of all three. He was sentenced to life imprisonment for murder, twenty-five years (consecutive) for armed robbery, and ten years (concurrent) for conspiracy. He appeals.

## FACTS

H.D. Chandler and his wife of forty-six years, Ruby, operated a convenience store named "H.D.'s Kwik Shop" in Olanta. At 11:00 p.m. on August 9, 1991, as they were locking up the store for the evening, they were robbed by a young male

armed with a .22-caliber pistol. As that male demanded money from the Chandlers, a second male came from behind Mr. Chandler and pulled him backwards to the ground. The first male then shot and killed Mr. Chandler, and both assailants fled.

By viewing a photographic lineup, Mrs. Chandler later identified the first male as Appellant.[1] She also recognized Appellant because she had served lunch to him for several years at the local school cafeteria while he was a student there. Mrs. Chandler's identification of Appellant was the primary evidence offered against him, although there was other circumstantial evidence.

At the first trial of the case, Appellant called fifteen-year-old Willie M. as a witness. Appellant contended that it was Willie, not Appellant, who had shot H.D. Chandler. At Appellant's request, the trial court declared Willie to be a hostile witness. Willie denied any involvement with the crime. The jury was unable to reach a verdict, and trial court declared a mistrial.

During the second trial of the case, Appellant again sought to call Willie as a witness and have him declared hostile. The trial court conducted an *in camera* examination of Willie, who again denied any knowledge of the crime. The court refused to declare Willie a hostile witness because Appellant would not be surprised by his testimony. However, the court did offer to call Willie as a court's witness and offered to allow both sides to fully cross-examine him. Appellant declined this offer.

Appellant also offered the testimony of Wendell Belser. *In camera*, Belser testified that he had been involved in several crimes with Willie as his accomplice. He further testified that Willie had told him that it was he, Willie, who had actually shot H.D. Chandler. Belser admitted, however, that he thought Willie was only joking when he said it. Belser further stated that he felt he had taken the blames for crimes which were actually committed by Willie. To corroborate Belser's testimony, Appellant sought to call another witness who would supposedly testify that on the night of H.D. Chandler's murder, this witness was approached by Willie who attempted to sell a .22-caliber pistol to him.[2] (Chandler was killed with a

---

[1] The identity of the second male is unknown.

[2] This witness did not testify at the first trial, and his name does not appear in the record.

.22-caliber bullet.) The trial court excluded the testimony of both of these witnesses.

## DISCUSSION

### I. *Hostile Witness*

Appellant first argues that the trial court erred in refusing to declare Willie M. a hostile witness and that the application of the voucher rule to his case was a denial of due process. *See Chambers v. Mississippi*, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed. (2d) 297 (1973). We disagree.

Generally, a party offering a witness vouches for his truthfulness and cannot cross-examine or impeach the witness. *State v. Sloan*, 278, S.C. 435, 298 S.E. (2d) 92 (1982). However, a party may impeach his own witness if the trial court, upon a showing of both actual surprise and harm, declares the witness to the hostile. *State v. Bailey*, 298 S.C. 1, 377 S.E. (2d) 581 (1989).[3] Here, Willie's testimony lacks the requisite element of surprise. Due to Willie's testimony during the first trial as well as his *in camera* testimony during the second, Appellant was not surprised as he might have been during the first trial.

At any, rate, the trial court offered to call Willie as a court's witness and afford both sides the opportunity to fully cross-examine him. *See State v. Anderson*, 304 S.C. 551, 406 S.E. (2d) 152 (1991). For whatever reason, Appellant declined this offer. By offering to call Willie as a court's witness, the trial court provided a fundamentally fair alternative to declaring Willie a hostile witness. Any prejudice suffered by Appellant resulted from his own decision not to avail himself of the offered alternative.[4] Thus, Appellant was not deprived of due process. *See Chambers, supra.*

### II. *Belser's Testimony*

Appellant next contends that the trial court erred by excluding Wendell Belser's testimony that Willie M. had admitted to the murder. Appellant argues that

---

[3] In adopting the new South Carolina Rules of Evidence, effective September 3, 1995, this Court abandoned the common law voucher rule. Rule 607, SCRE. Under new Rule 607: "The credibility of a witness may be attacked by any party, including the party calling the witness."

[4] We express no opinion as to whether Appellant suffered prejudice by declining the trial court's offer to call Willie as a court's witness.

Willie's alleged admission of guilt, although hearsay, is admissible as a statement against penal interest. We disagree that this exception to the hearsay rule is applicable to this case.

In *State v. Doctor*, 306 S.C. 527, 413 S.E. (2d) 36 (1992), we addressed the admissibility of out-of-court statements made against the declarant's penal interest offered to exculpate the accused.

> We now hold out-of court statement made by an *unavailable* declarant are admissible in both civil and criminal trials. However, if offered to exculpate the accused in a criminal trial, it is admissible only if *corroborating evidence clearly indicates the trustworthiness of the statement*. We note this rule is in accord with the Federal Rules of Evidence, Rule 804(b)(3).

306 S.C. at 529-530, 413 S.E. (2d) at 38 (emphasis added).[5] Belser's testimony fails the *Doctor* test in two important respects.

First, the declarant in this case, Willie, was available to testify. *See State v. Steadman*, 216 S.C. 579, 59 S.E. (2d) 168, *cert. denied*, 340 U.S. 850, 71 S.Ct. 78, 95 L.Ed. 623 (1950) (witness who is absent from the jurisdiction and cannot be found is unavailable); *State v. Rogers*, 101 S.C. 280, 85 S.E. 636 (1915) (unavailability includes instances where the declarant is dead, insane, "beyond seas," or where the declarant has been kept away by the contrivance of the opposing party); Fed. R. Evid. 804(a) (federal rules' definition of unavailability adopted by this Court in Rule 804(a), SCRE); *Doctor, supra* (declarants made unavailable by their assertion of their privilege against self-incrimination). Willie testified during the *in camera* hearing and was present and ready to testify at the trial. As stated above, the trial court offered to call Willie as a court's witness, but Appellant declined. Moreover, Willie did not exercise any fifth amendment privilege against self-incrimination.

Second, no corroborating evidence existed which clearly indicated the trustworthiness of Willie's statement against penal interest. On the contrary, the evidence presented during the *in camera* hearing severely undermined that statement's trustworthiness. Belser admitted that he felt Willie had

---

[5] The rule in *Doctor* is found in Rule 804(b)(3), SCRE.

wrongly put the blame on him for crimes actually committed by Willie. This statement suggested that Belser had a possible motive for attributing Chandler's murder to Willie. Belser also stated that when Willie confessed to the murder, he felt Willie was only joking. Indeed, Willie himself admitted telling at least three different versions of his story at one time or another.

The only potential corroboration of Belser's testimony proffered by Appellant was itself inadmissible: a witness who would testify that on the night of Chandler's murder, Willie had attempted to sell this witness a .22-caliber pistol. The trial court excluded this testimony, and Appellant argues that the court erred in so doing. We disagree. The proffered witness was to testify to an out-of-court statement, made by Willie, offered in court to prove that Willie was the perpetrator of Chandler's murder. As this out-of-court statement was hearsay, it was properly excluded. *See State v. Brown*, 451 S.E. (2d) 888 (S.C. 1994) (definition of hearsay).

Accordingly, the judgment below is

Affirmed.

FINNEY, C.J., TOAL and MOORE, JJ., and GEORGE T. GREG-ORY, JR., Acting Associate Justice, concur.