J-A20001-15

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| JUAN C. SOSA, | : | |
| | : | |
| Appellant | : | No. 195 EDA 2014 |

Appeal from the Judgment of Sentence December 9, 2013,
Court of Common Pleas, Philadelphia County,
Criminal Division at No. CP-51-CR-0006214-2012

BEFORE:  DONOHUE, SHOGAN and WECHT, JJ.

MEMORANDUM BY DONOHUE, J.:          **FILED SEPTEMBER 28, 2015**

Appellant, Juan C. Sosa ("Sosa"), appeals from the judgment of sentence entered on December 9, 2013 by the Court of Common Pleas of Philadelphia County, Criminal Division, following his convictions of robbery, criminal conspiracy, robbery of a motor vehicle, firearms not to be carried without a license, carrying firearms on public streets or public property in Philadelphia, receiving stolen property, possessing instruments of crime, and altering or obliterating marks of identification.[1]  For the reasons that follow, we affirm.

The trial court summarized the facts of this case as follows:

> Valentin Palillero … was the owner and a delivery driver for San Lucas Pizza.  On January 1, 2012, at around 11:30 p.m., [Palillero] received a pizza order

---

[1]  18 Pa.C.S.A. §§ 3701(a)(1)(ii), 903, 3702(a), 6106(a)(1), 6108, 3925(a), 907(a), 6117(a).

to be delivered to 2219 Reese Street. [Palillero] drove the order to 2219 Reese Street in his red Ford Explorer, but upon arrival the same caller instructed him to take the order to a different address. As the different address did not exist, [Palillero] returned to 2219 Reese Street. Upon [Palillero]'s return, a heavyset individual was waiting, sitting on the steps in front of 2219 Reese Street. After [Palillero] reached into the backseat to secure the receipt with the order and then turned around, two other individuals pressed a gun to [Palillero]'s head. They ordered him to exit the car and hand over his money, cards, wallet and phone. One perpetrator drove away in the red Ford Explorer, and the other two fled on foot. [Palillero] walked back to his pizza shop and called the police. While patrolling the area in search of the carjackers, Police Officer Gerson Padilla located the red Ford Explorer parked on the 2200 block of Mildred Street. A plainclothes police unit set up surveillance in the event someone would return to the vehicle, but no one did.

The following night, in response to flash information and radio calls for an unrelated incident, Officer Padilla drove to the area of 2200 Mildred [Street]. The investigation took them into [Sosa]'s house located at 2241 Darien Street[.] [Sosa] was inside, along with the keys to the red Ford Explorer, pizza boxes from San Lucas Pizza, and a black Beretta firearm in [Sosa]'s bedroom. (Id. at 57, 101-102, 113).

Trial Court Opinion, 6/30/14, at 4 (record citations omitted).

Police arrested Sosa that same evening. On September 23, 2013, following trial, a jury found Sosa guilty of the above referenced crimes. On December 9, 2013, the trial court sentenced Sosa to a total of twelve to twenty-four years of incarceration. On December 17, 2013, Sosa filed a

timely post-sentence motion, which the trial court denied the same day. On December 27, 2013, Sosa filed a timely notice of appeal.

On January 2, 2010, the trial court ordered Sosa to file a concise statement of the errors complained of on appeal pursuant to Rule 1925(b) of the Pennsylvania Rules of Appellate Procedure. On January 10, 2014, Sosa requested an extension for filing his Rule 1925(b) statement because he had yet to receive his sentencing transcripts. That same day, the trial court granted Sosa the extension, making his Rule 1925(b) statement due on February 13, 2014. On February 7, 2014, Sosa filed a timely Rule 1925(b) statement in which he raised issues challenging the sufficiency of the evidence to support his robbery, robbery of a motor vehicle, and conspiracy convictions and alleging that his verdict was against the weight of the evidence. *See* Pa.R.A.P. 1925(b) Statement, 2/7/14, at 1-2. Additionally, in his Rule 1925(b) statement, Sosa "respectfully reserv[ed] the right to supplement and amend this [Rule] 1925(b) [s]tatement" because he had yet to receive his sentencing transcripts. *Id.* at 2. On March 26, 2014, Sosa filed an untimely supplemental Rule 1925(b) statement in which he raised an additional sufficiency of the evidence claim relating to his firearms not to be carried without a license conviction and several discretionary aspects of sentencing claims. *See* Supplemental Pa.R.A.P. 1925(b) Statement, 3/26/14, at 1-4.

On appeal, Sosa now raises the following issues for our review and determination:

> I. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, was the evidence insufficient to sustain [Sosa]'s [r]obbery convictions and [c]onspiracy conviction?
>
> II. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, were [Sosa]'s convictions against the weight of the evidence?
>
> III. Under the Sixth and Fourteenth Amendments of the U.S. Constitution as well as Article I, § 9 of the Pennsylvania Constitution, was the evidence insufficient to sustain [Sosa]'s conviction for 18 Pa.C.S.A. § 6106(a)(1)?
>
> IV. Under the Fifth, Eighth, and Fourteenth Amendments of the U.S. Constitution as well as Article I, §§ 9, 13 of the Pennsylvania Constitution, did the [t]rial [c]ourt abuse its discretion in sentencing [Sosa]?

Sosa's Brief at 4.

For his first issue on appeal, Sosa challenges the sufficiency of the evidence for his robbery, robbery of a motor vehicle, and criminal conspiracy convictions. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the

evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, the fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa. Super. 2013) (internal quotations and citations omitted).

Sosa argues that the evidence was insufficient to identify him as the heavyset man who was sitting outside of 2219 Reese Street when Palillero pulled up to that address for the second time. Sosa's Brief at 30-35. Sosa also argues that there is no evidence proving that he played any part in Palillero's robbery. *Id.* at 31-34. Sosa does not contest that the two men who approached Palillero with a gun and stole his vehicle committed robbery

and robbery of a motor vehicle. Therefore, Sosa's arguments require us to determine whether the evidence presented proved that he was the heavyset individual referred to above and if so, whether he can be linked to Palillero's robbery as a coconspirator.

The Pennsylvania Crimes Code defines criminal conspiracy as follows:

> **(a) Definition of conspiracy.--**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.

18 Pa.C.S.A. § 903(a). This Court has long held that this requires proof of "(1) an intent to commit or aid in an unlawful act, (2) an agreement with a co-conspirator and (3) an overt act in furtherance of the conspiracy." **Commonwealth v. Thoeun Tha**, 64 A.3d 704, 710 (Pa. Super. 2013) (quoting **Commonwealth v. Galindes**, 786 A.2d 1004, 1010 (Pa. Super. 2001)). "This overt act need not be committed by the defendant; it need only be committed by a co-conspirator." **Commonwealth v. Murphy**, 795 A.2d 1025, 1038 (Pa. Super. 2002) (quotations and citation omitted).

> The essence of a criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished. Therefore, a conviction for conspiracy requires proof of the existence of a shared criminal intent. An explicit or formal agreement to commit crimes can seldom, if ever, be proved and it need not be, for proof of a criminal partnership is almost invariably extracted from the circumstances that attend its activities. Thus, a conspiracy may be inferred where it is demonstrated that the relation, conduct, or circumstances of the parties, and the overt acts of the co-conspirators sufficiently prove the formation of a criminal confederation. The conduct of the parties and the circumstances surrounding their conduct may create a web of evidence linking the accused to the alleged conspiracy beyond a reasonable doubt. Even if the conspirator did not act as a principal in committing the underlying crime, he is still criminally liable for the actions of his co-conspirators in furtherance of the conspiracy.

*Commonwealth v. McCall*, 911 A.2d 992, 996-97 (Pa. Super. 2006) (quoting *Commonwealth v. Johnson*, 719 A.2d 778, 784–85 (Pa. Super. 1998) (en banc)).

We conclude that the evidence, when viewed in the light most favorable to the Commonwealth as the verdict winner, establishes that Sosa was the heavyset male present at the scene of the crime when the robbery of Palillero took place and links him to the robbery as a coconspirator. The certified record on appeal reflects the following. When Palillero returned to 2219 Reese Street, he encountered a heavyset individual sitting in front of the house whose face Palillero was unable to see. N.T., 9/17/13, at 40-41. Sosa's arrest report indicates that he is six feet tall and weighs 280 pounds.

- 7 -

Biographical Information Report, 1/2/12, at 1. Assuming the heavyset individual was the person who placed the pizza order, Palillero turned to the backseat of his vehicle to determine the total cost of the order. N.T., 9/17/13, at 41-42. Palillero then felt someone place a gun against the back of his head. *Id.* Two individuals, who Palillero described as short and thin, then removed him from his vehicle and demanded his cash, wallet, and cellphone, and car keys. *Id.* at 42, 70-71. One of these two individuals then got into Palillero's red Ford Explorer and drove away. *Id.* at 43. The other individual, along with the heavyset person described above, ran away from the scene. *Id.*

Later that evening, police found Palillero's red Ford Explorer parked on the 2200 block of Mildred Street, behind Sosa's house. N.T., 9/18/13, at 38, 43-49; N.T., 9/19/13, at 55. Police eventually obtained a warrant to search Sosa's home. *See id.* at 99. During the search, police recovered the keys to Palillero's red Ford Explorer, pizza boxes from Palillero's pizza shop, a firearm resembling the one used during the robbery of Palillero, and a black scarf resembling the one worn by one of the assailants during the robbery. *Id.* at 113; N.T., 9/17/13, at 51-56.

Therefore, the evidence, viewed in the light most favorable to Commonwealth, creates the reasonable inference that Sosa was the heavyset individual who was sitting outside of 2219 Reese Street while Palillero was robbed, who fled the scene of the robbery with one the other

assailants, taking the items stolen from the robbery to his home. Although the evidence reveals that Sosa did not actually take anything from Palillero's person, it sufficiently proves that Sosa was present during the robbery and that he agreed to aid his coconspirators in robbing Palillero by making him believe Sosa ordered the pizza and by helping them flee and conceal the items taken from Palillero. Thus, the evidence reveals the intent to commit an unlawful act, an agreement with the coconspirators to engage in that unlawful act, and overt acts in furtherance of the conspiracy. **See Thoeun Tha**, 64 A.3d at 710. Accordingly, the evidence is sufficient to sustain Sosa's robbery, robbery of a motor vehicle, and criminal conspiracy convictions.

We disagree with Sosa that **In Interest of G.G.**, 714 A.2d 467 (Pa. Super. 1998), is instructive in this case and supports his sufficiency challenge. In **G.G.**, while the victim was walking home from school, G.G.'s coconspirator called for him to come across the street. **Id.** at 474. The victim complied and the coconspirator then told the victim that he wanted to see what was in the victim's pockets and bag. **Id.** The victim opened his bag and the coconspirator and G.G. both peered into the bag. **Id.** The coconspirator took a geometric compass from the victim. **Id.** The coconspirator and G.G. then left the scene. **Id.** During the entire incident, G.G. did not speak or make any threatening physical movements. **Id.**

Our Court held that the evidence was insufficient to sustain G.G.'s conspiracy conviction because there was no evidence of any agreement between G.G. and the coconspirator or that G.G. acted in furtherance of a conspiracy. *Id.* at 474-75. *G.G.*, however, is readily distinguishable from the instant matter. Significantly, here, the police recovered the items taken from Palillero during the robbery from Sosa's home. Additionally, given the way in which Palillero was lured away from and then back to 2219 Reese Street and that upon his return to 2219 Reese Street, he understood the heavyset individual to be the person who had ordered the pizza, it is reasonable to infer that Sosa played a role in luring Palillero into the robbery. Therefore, because *G.G.* is inapplicable to the instant matter, this argument does not entitle Sosa to any relief.

For his second issue on appeal, Sosa argues that his conviction was against the weight of the evidence. The Commonwealth contends that Sosa has waived his weight of the evidence claim for failing to state with specificity why the verdict was against the weight of the evidence in his post-sentence motion. Commonwealth's Brief at 23-24. A "boilerplate" post-sentence motion that "'the verdict was against the weight of the evidence,' will preserve no issue for appellate review unless the motion goes on to specify … *why* the verdict was against the weight of the evidence." *Commonwealth v. Holmes*, 461 A.2d 1268, 1270 (Pa. Super. 1983) (en banc) (emphasis in the original). Here, in his post-sentence motion, Sosa

merely averred that "[a] new trial is appropriate because the verdict is against the weight of the evidence." Post-Sentence Motion, 12/17/13, at ¶¶ 7-9. Accordingly, we conclude that Sosa has not preserved his weight of the evidence claim for appellate review.

Even if Sosa had preserved his weight of the evidence claim, it is nonetheless meritless. Our standard of review when presented with a weight of the evidence claim is different from that applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 758 (Pa. Super. 2014). Therefore, "an appellate court reviews the exercise of the trial court's discretion; it does not answer for itself whether the verdict was against the weight of the evidence." *Commonwealth v. Houser*, 18 A.3d 1128, 1135-36 (Pa. 2011). Importantly, "a new trial based on a weight of the evidence claim is only warranted where the jury's verdict is so contrary to the evidence that it shocks one's sense of justice." *Id.*

Sosa argues that Jesus Crisantos ("Crisantos") was not a credible witness. Crisantos gave a police statement linking Sosa to the robbery of Palillero and the charge of firearms not to be carried without a license. **See** N.T., 9/18/13, at 168-70; N.T., 9/19/13, at 53. Sosa contends that Crisantos was not a credible witness because, at trial, Crisantos recanted the statement he gave to police, because Crisantos was in prison for a conviction of crimen falsi, and because Crisantos received immunity for any involvement he may have had in Palillero's robbery by testifying at Sosa's trial. Sosa's Brief at 24-26. Sosa asserts that the unreliable statement Crisantos gave to police is the only evidence linking Sosa to the robbery. **Id.** at 26.

We conclude that the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence. The jury heard testimony about Crisantos' prior crimen falsi conviction, about Crisantos receiving immunity for testifying against Sosa, and that Crisantos was recanting the statement he gave to police. N.T., 9/18/13, at 148-53, 174-75. Ultimately, the jury determined that, despite these potential problems with Crisantos as a witness, the statement he gave to police was credible. "It is well established that this Court is precluded from reweighing the evidence and substituting our credibility determination for that of the fact-finder." **Commonwealth v. Thompson**, 106 A.3d 742, 758 (Pa. Super. 2014). "The weight of the evidence is a matter exclusively for the finder of

fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." ***Commonwealth v. Gonzalez***, 109 A.3d 711, 723 (Pa. Super. 2015). As the fact-finder, the jury had the responsibility of determining whether these factors affected Crisantos' credibility as a witness. By convicting Sosa, the jury demonstrated that it believed the statement Crisantos gave to police and that it did not find credible his recantation of that statement.

Moreover, our review of the certified record reveals that Crisantos' statement was not the only evidence linking Sosa to the robbery. ***See supra***, pp. 7-9. Based on our review of the record, the trial court did not abuse its discretion in finding that the verdict was not against the weight of the evidence.

Before discussing the merits of the third and fourth issues Sosa raises on appeal, we must address the allegations of waiver relating to those issues raised by the Commonwealth. The Commonwealth asserts that the trial court did not authorize Sosa's untimely supplemental Rule 1925(b) statement and that consequently, Sosa has waived any issue raised in his supplemental Rule 1925(b) statement that he did not include in his timely Rule 1925(b) statement. ***See*** Commonwealth's Brief at 28. Sosa responds by pointing out that the trial court stated that his supplemental Rule 1925(b) statement was timely. Sosa's Reply Brief at 7.

It is well settled that "in order to preserve their claims for appellate review, [a]ppellants must comply whenever the trial court orders them to file a Statement of Matters Complained of on Appeal pursuant to Rule 1925. Any issues not raised in a 1925(b) statement will be deemed waived." ***Commonwealth v. Lord***, 719 A.2d 306, 309 (Pa. 1998); ***see also*** Pa.R.A.P. 1925(b)(4)(vii). Additionally, this Court has held that "the waiver analysis set forth in ***Lord*** applied not only to cases where an appellant failed to file a concise statement or omitted appellate issues from a concise statement, but also to cases where he filed a court-ordered statement in an untimely manner." ***Commonwealth v. Lane***, 81 A.3d 974, 979-80 (Pa. Super. 2013), *appeal denied*, 92 A.3d 811 (Pa. 2014).

Importantly, our Court has held that "an appellant's mere language in an initial, timely 1925(b) statement unilaterally reserving additional time in which to file an untimely 1925(b) statement will not suffice to preserve future issues raised in any untimely statement, even when the reason for such action is the result of the unavailability of transcripts." ***Commonwealth v. Woods***, 909 A.2d 372, 377-78 (Pa. Super. 2006). This Court explained,

> [A]n appellant cannot simply include in a timely Pa.R.A.P. 1925(b) statement a "reservation of right" or other informal request to file an untimely, supplemental Pa.R.A.P. 1925(b), no matter what the reason might be for such a request. Rather, in order to file an untimely initial or supplemental Pa.R.A.P. 1925(b) statement, an appellant must file a separate

> petition seeking an extension of time or permission to file a Pa.R.A.P. 1925(b) statement nunc pro tunc. Such action will guarantee the trial court will take explicit action[.]

*Id.* at 377 n.10.

According to this Court in **Woods**, to preserve issues raised in what otherwise would be considered an untimely Rule 1925(b) statement, an appellant must file a petition with the trial court, "setting forth good cause for an extension of a specific amount of time in which to file the statement, and obtain an order granting the request for the extension before the issues raised in an untimely 1925(b) statement will be preserved for appeal to this Court." *Id.* at 378. Alternatively, "an appellant who has filed a timely Pa.R.A.P. 1925(b) statement, and then for good cause shown discovers that additional time is required to file a supplemental Pa.R.A.P. 1925(b) statement, may file a separate petition seeking permission to file a supplemental Pa.R.A.P. 1925(b) statement nunc pro tunc." *Id.* at 378 n.11.

Here, on January 2, 2010, the trial court ordered Sosa to file a Rule 1925(b) statement. On January 10, 2014, the trial court granted Sosa's request for an extension for filing his Rule 1925(b) statement because he had yet to receive his sentencing transcripts, making his Rule 1925(b) statement due on February 13, 2014. On February 7, 2014, Sosa timely filed his Rule 1925(b) statement. In his Rule 1925(b) statement, Sosa "respectfully reserv[ed] the right to supplement and amend this [Rule]

1925(b) [s]tatement" because he had yet to receive his sentencing transcripts. *See* Pa.R.A.P. 1925(b) Statement, 2/7/14, at 2. Sosa did not, however, file the requisite petition for an extension of time for filing an otherwise untimely Rule 1925(b) statement under *Woods* or receive an order granting such a request. *See Woods*, 909 A.2d at 377-78. On March 26, 2014, Sosa untimely filed his supplemental Rule 1925(b) statement.

Sosa contends that *Woods* is not applicable to this case because of the 2007 revisions to Rule 1925. Sosa's Reply Brief at 10-11. We disagree. Rule 1925(b)(2) currently states,

> Upon application of the appellant and for good cause shown, the judge may enlarge the time period initially specified or permit an amended or supplemental Statement to be filed. Good cause includes, but is not limited to, delay in the production of a transcript necessary to develop the Statement so long as the delay is not attributable to a lack of diligence in ordering or paying for such transcript by the party or counsel on appeal. In extraordinary circumstances, the judge may allow for the filing of a Statement or amended or supplemental Statement nunc pro tunc.

Pa.R.A.P. 1925(b)(2). Thus, given the similarities between Rule 1925(b)(2) and the rule set forth in *Woods*, we conclude that *Woods* is applicable to this case.

Following the filing of his timely Rule 1925(b) statement, Sosa did not request any further extension and there is no order in the record indicating that the trial court again enlarged the time period for filing his Rule 1925(b)

statement or permitted Sosa to file an amended or supplemental statement. Rather, Sosa merely "respectfully reserv[ed] the right to supplement and amend this [Rule] 1925(b) [s]tatement" in his timely Rule 1925(b) statement so that he could unilaterally file a supplemental Rule 1925(b) statement. *See* Pa.R.A.P. 1925(b) Statement, 2/7/14, at 2. Sosa's attempt to unilaterally file a supplemental Rule 1925(b) statement is expressly prohibited by **Woods** and not in accordance with the procedure for seeking permission to file a supplemental statement set forth in Rule 1925(b)(2). **See Woods**, 909 A.2d at 377-78; Pa.R.A.P. 1925(b)(2).

Rule 1925(c)(3), however, further provides:

> If an appellant in a criminal case was ordered to file a Statement and failed to do so, such that the appellate court is convinced that counsel has been per se ineffective, the appellate court shall remand for the filing of a Statement nunc pro tunc and for the preparation and filing of an opinion by the judge.

Pa.R.A.P. 1925(c)(3). In **Commonwealth v. Burton**, 973 A.2d 428 (Pa. Super. 2009) (en banc), an en banc panel of this Court expanded the rule set forth in Rule 1925(c)(3) to include not only the failure to file a Rule 1925(b) statement, but the untimely filing of a 1925(b) statement as well. **Id.** at 432-33. Under **Burton**, both the failure to file a Rule 1925(b) statement and the untimely filing of a Rule 1925(b) statement are per se ineffective assistance of counsel. **Id.** The panel explained:

> The complete failure to file the 1925 concise statement is per se ineffectiveness because it is

without reasonable basis designed to effectuate the client's interest and waives all issues on appeal. Likewise, the untimely filing is per se ineffectiveness because it is without reasonable basis designed to effectuate the client's interest and waives all issues on appeal. Thus[,] untimely filing of the 1925 concise statement is the equivalent of a complete failure to file. Both are per se ineffectiveness of counsel from which appellants are entitled to the same prompt relief.

The view that Rule 1925(c)(3) does not apply to untimely 1925 concise statements would produce paradoxical results. The attorney who abandons his client by failing to file a 1925 concise statement would do less of a disservice to the client than the attorney who files a 1925 concise statement beyond the deadline for filing. Clients each victimized by per se ineffectiveness would be treated differently; the abandoned client would receive remand, "the more effective way to resolve such per se ineffectiveness," whereas the client whose lawyer files the 1925 concise statement late would be consigned to filing under the Post Conviction Relief Act, 42 Pa.C.S.A. § 9541 et seq.

Rule 1925(c)(3) was adopted by the Supreme Court to avoid unnecessary delay in the disposition on the merits of cases which results from per se ineffectiveness of appellant's counsel. To accomplish the manifest purpose of the rule untimely filing of a 1925 concise statement ought to have no more severe consequence than a complete failure to file. Thus, if there has been an untimely filing, this Court may decide the appeal on the merits if the trial court had adequate opportunity to prepare an opinion addressing the issues being raised on appeal. If the trial court did not have an adequate opportunity to do so, remand is proper.

*Id.* (footnote omitted).

Although this case does not present a scenario in which Sosa's untimely filing of his supplemental Rule 1925(b) statement would waive all issues on appeal, it nonetheless represents per se ineffective assistance of counsel on the part of Sosa's post-trial/appellate counsel. *See id.*; Pa.R.A.P. 1925(c)(3). The untimely filing of Sosa's supplemental Rule 1925(b) statement was without a reasonable basis designed to effectuate Sosa's interest because it needlessly resulted in the waiver of all the issues raised in that statement that Sosa did not raise in his timely Rule 1925(b) statement. Sosa's post-trial/appellate counsel easily could have, and should have, requested another extension or permission to file a supplemental statement from the trial court pursuant to Rule 1925(b)(2) because he had yet to receive Sosa's sentencing transcripts. *See* Pa.R.A.P. 1925(b)(2). Moreover, if we do not apply *Burton* in this case, it would have the anomalous result of putting Sosa in a better position had his post-trial/appellate counsel not filed the timely but incomplete Rule 1925(b) statement.

Therefore, because the actions of Sosa's post-trial/appellate counsel were per se ineffective, we decline to find waiver of Sosa's third and fourth issues on the basis that Sosa's supplemental Rule 1925(b) statement was untimely. Additionally, because the trial court had adequate opportunity to and did indeed prepare an opinion addressing the issues raised in Sosa's

supplemental Rule 1925(b) statement, we may address the merits of Sosa's third and fourth issues. *See Burton*, 973 A.2d at 432-33.

For his third issue on appeal, Sosa argues that the evidence was insufficient to sustain his conviction for firearms not to be carried without a license under section 6106(a)(1) of the Crimes Code because police only recovered a firearm from Sosa's "abode." Sosa's Brief at 36-37. Sosa contends that there is no evidence that he ever carried a firearm outside his place of abode. *Id.* at 36.

Section 6106(a)(1) provides as follows:

> **(a) Offense defined.--**
>
>> (1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S.A. § 6106(a)(1) (footnote omitted).

The certified record on appeal reflects that there is sufficient evidence to sustain Sosa's conviction under section 6106(a)(1). The certified record reveals that Crisantos told police the following:

> We were driving around. I was sitting in the back of the car. Carlos said "yo, yo, yo" and told Nick to pull the car over. Nick pulled over. Carlos and Danny got out of the car.
>
> *     *     *

> It was quick. Carlos and Danny came back and said "go, go, go." I seen Carlos with a gun. It looks like he had duct tape around it. Nick drove to Mildred Street right behind Key School. I hopped out of the car and we went inside Carlos' house on Mildred Street. I was in the kitchen. Carlos came running into the house throwing shit yelling, the cops, the cops. I went to the front door. I seen a female cop coming up to the door. I knew why the cops were there.

N.T., 9/19/13, at 53.

Sosa asserts that Crisantos' statement is not evidence of his crimes because Crisantos' statement refers to a "Carlos," who Sosa maintains is some other unidentified individual. Sosa's Brief at 32. However, when Sosa was arrested he told police that his name was Carlos Sosa. N.T., 9/19/13, at 52. Therefore, viewing the evidence in the light most favorable to the Commonwealth, we conclude that the "Carlos" that Crisantos refers to in his police statement is indeed Sosa. Thus, the certified record reflects that Sosa carried a firearm outside his place of abode and the evidence is therefore sufficient to sustain his conviction under section 6106(a)(1).

For his fourth issue on appeal, Sosa challenges the discretionary aspects of his sentence. Despite declining to find waiver of this issue based on Rule 1925(b), we must nevertheless conclude that Sosa has waived this issue on appeal because as the Commonwealth points out, Sosa failed to challenge the discretionary aspects of his sentence during sentencing or in a post-sentence motion. *See* Commonwealth's Brief at 27-29. It is well

settled that "'issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a discretionary aspect of a sentence is waived.'"[2] ***Commonwealth v. Cartrette***, 83 A.3d 1030, 1042 (Pa. Super. 2013) (en banc) (quoting ***Commonwealth v. Kittrell***, 19 A.3d 532, 538 (Pa. Super. 2011)). "[A] party cannot rectify the failure to preserve an issue by proffering it in response to a Rule 1925(b) order." ***Commonwealth v. Tejada***, 107 A.3d 788, 799 (Pa. Super. 2015). (quotations and citation omitted).

---

[2] Our determination that Sosa has waived his discretionary aspects of sentencing claims is required even though the trial court conceded that it improperly sentenced Sosa:

> (1) [Sosa]'s conviction for Conspiracy to Commit Robbery was treated as having an Offense Gravity Score (OGS) of 10 when it should have been a 9, and (2) [Robinson] was sentenced using the Deadly Weapon Enhancement for Use, when he should have been sentenced using the Deadly Weapon Enhancement for Possession.

Trial Court Opinion, 6/30/14, at 11.

We note that neither of the above sentencing claims present legality issues, and are therefore waivable. ***See Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa. Super. 2012) (en banc) (finding that a claim that the trial court wrongly applied an offense gravity score was a claim challenging the discretionary aspects of a sentence); ***Commonwealth v. Stokes***, 38 A.3d 846, 857-58 (Pa. Super. 2011) (holding that claims involving the application of the deadly weapon enhancement are claims challenging the discretionary aspects of a sentence).

Sosa argues that because his post-trial/appellate counsel was not his trial counsel and his post-trial/appellate counsel had not received his sentencing transcripts before post-sentence motions were due that post-trial/appellate counsel preserved his discretionary aspects of sentencing claims by raising them in his Rule 1925(b) statement. Sosa's Reply Brief at 2-6. Despite Sosa's change of counsel, our law is clear that an appellant cannot raise issues for the first time in Rule 1925(b) statement. **See Tejada**, 107 A.3d at 799. Moreover, Sosa's post-trial/appellate counsel could have petitioned the trial court to allow the filing of post-sentence motions nunc pro tunc. **See Commonwealth v. Moore**, 978 A.2d 988, 991 (Pa. Super. 2009). ("To be entitled to file a post-sentence motion nunc pro tunc, a defendant must, within 30 days after the imposition of sentence, demonstrate sufficient cause, i.e., reasons that excuse the late filing. ... When the defendant has met this burden and has shown sufficient cause, the trial court must then exercise its discretion in deciding whether to permit the defendant to file the post-sentence motion nunc pro tunc."). Accordingly, Sosa is not entitled to any relief.

Judgment of sentence affirmed.

Wecht, J. joins the Memorandum.

Shogan, J. files a Concurring and Dissenting Memorandum.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 9/28/2015*